1  GLANCY BINKOW & GOLDBERG LLP
2  LIONEL Z. GLANCY (#134180)
   MICHAEL GOLDBERG (#188669)
3  ROBERT V. PRONGAY (#270796)
4  1801 Avenue of the Stars, Suite 311
   Los Angeles, California 90067
5  Telephone:  (310) 201-9150
6  Facsimile:   (310) 201-9160
7  Attorneys for Plaintiff Wei Kuang Yen
8
9  *[Additional Counsel on Signature Page]*

10          **UNITED STATES DISTRICT COURT**
11          **CENTRAL DISTRICT OF CALIFORNIA**

12  _____   **CV11-03537** ODW (FMOX)

13                                      ) Case No. _____
   WEI KUANG YEN, Individually and on   )
14  Behalf of All Others Similarly Situated,  ) CLASS ACTION
15                                      )
                                        )
16              Plaintiff,              ) **COMPLAINT FOR**
                                        ) **VIOLATIONS OF THE**
17        v.                            ) **FEDERAL SECURITIES LAWS**
                                        )
18  UNIVERSAL TRAVEL GROUP,             )
19  JIANGPING JIANG, YIZHAO ZHANG,      )
   and JING XIE,                        )
20                                      )
21              Defendants.             ) DEMAND FOR JURY TRIAL
22  _____   )

23
24
25
26
27
28

Plaintiff Wei Kuang Yen, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by UNIVERSAL TRAVEL GROUP ("UTG" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by UTG; and (c) review of other publicly available information concerning UTG.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a federal class action on behalf of purchasers of UTG's securities between January 19, 2010 and April 12, 2011, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     UTG is a China-based travel services provider, focusing on the domestic tourism market for leisure and corporate travel and offering packaged tours, air ticketing, and hotel reservation services.  Throughout 2010, the Company made a number of acquisitions, including travel agencies and travel services companies.

3.     On March 8, 2011, a research report was published on the Internet that questioned UTG's financial statements, business model, and the valuation of certain recent acquisitions.  Specifically, the report alleged that the net income and revenue

of certain companies UTG had acquired in 2010, were far less than UTG had represented in its public flings.

4.      On this news, shares of UTG declined $0.47 per share, or 7.6%, to close on March 9, 2011, at $5.71 per share, on unusually heavy volume.

5.      On March 29, 2011, UTG unexpectedly announced that it was indefinitely postponing a previously announced conference call to discuss its financial results for the 2010 fiscal year that had been scheduled for the morning of March 30, 2011.  The Company claimed that the "postponement was not due to any accounting irregularities and [would] allow the Company and its independent auditors to complete their work on the financial statements and audit."   Nevertheless, the unexpected announcement was concerning given that just two weeks prior, on March 15, 2011, the Company had announced that it was scheduling the conference call for March 30, 2011.

6.      On this news, shares of UTG declined $1.06 per share, more than 19%, to close on March 30, 2011, at $4.33 per share, on unusually heavy volume.  7      .

Thereafter, on or around April 11, 2011, trading in UTG's common stock was unexpectedly halted on the New York Stock Exchange ("NYSE").

8.      On April 14, 2011, the Company disclosed that on April 10, 2011, UTG received notification that its principal independent accountants, Windes & McClaughry Accountancy Corporation ("Windes"), had resigned its engagement with

the Company effective April 9, 2011.  According to UTG, Windes had provided the Company with a letter of resignation informing UTG that Windes was no longer able to complete the audit process, which was due in part to the Company's management and/or the Audit Committee being non-responsive, unwilling or reluctant to proceed in good faith and imposing scope limitations on Windes' audit procedures.  Moreover, the Company disclosed that Windes had also stated that it had lost confidence in the Board of Director's and the Audit Committee's commitment to sound corporate governance and reliable financial reporting.  In particular, UTG indicated that prior to Windes' resignation, Windes  had raised issues it encountered during the audit, including: issues related to the authenticity of confirmations; a loss of confidence in confirmation procedures carried out under circumstances that Windes believed to be suspicious; and issues concerning the lack of evidence of certain tour package contracts and related cash payments.

9.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the pre-acquisition net income and revenue of certain companies UTG acquired was less than UTG represented; (2) that there was a lack of evidence supporting certain tour package contracts and related cash payments: (3) that, as a result, the Company's financial statements were

misstated; (4) that the Company lacked adequate internal and financial controls; and (5) that, as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

10.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

13.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).   Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.

14.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

15.    Plaintiff Wei Kuang Yen, as set forth in the accompanying certification, incorporated by reference herein, purchased UTG common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.    Defendant UTG is a Nevada corporation with its principal executive offices located at 5th Floor, South Block, Building 11, Shenzhen Software Park, Zhongke 2nd Road, Nanshan District, Shenzhen, PRC 518000.

17.    Defendant Jiangping Jiang ("Jiang") was, at all relevant times, Chief Executive Officer ("CEO") and Chairwoman of UTG.

18.    Defendant Yizhao Zhang ("Zhang") was, at all relevant times, Chief Financial Officer ("CFO") of UTG until his resignation on or around August 16, 2010.

19.    Defendant Jing Xie ("Xie") was, at all relevant times, a Director and Secretary of UTG and was, at all relevant times, CFO of UTG since August 17, 2010.

20.    Defendants Jiang, Zhang, and Xie, are collectively referred to hereinafter as the "Individual Defendants." Defendants UTG, Kim, and Ko are collectively referred to herein as "Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of UTG's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each

defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

21.    Non-party Windes was, at all relevant times, UTG's independent public accountant from September 30, 2010, until its resignation on or around April 10, 2011. Windes is an accounting firm that offers a full range of services, including: audit and assurance, cost segregation, employee benefits, estate and trust planning, human resources recruiting and consulting, and tax planning, consulting, and compliance. Windes focuses on both publicly traded and privately held businesses, exempt organizations, and high-net-worth individuals. Windes is based in Southern California and maintains four offices located in Long Beach, Irvine, Torrance, and Los Angeles.

## SUBSTANTIVE ALLEGATIONS

### Background

22.     UTG is a China-based travel services provider, focusing on the domestic tourism market for leisure and corporate travel and offering packaged tours, air ticketing, and hotel reservation services.  Throughout 2010, the Company made a number of acquisitions, including travel agencies and travel services companies.

### Materially False and Misleading
### Statements Issued During the Class Period

23.     The Class Period begins on January 19, 2010.  On this day, the Company issued a press release entitled, "Universal Travel Group Announces Acquisition of Hebei Tianyuan Travel Agency."  Therein, the Company, in relevant part, stated:

> SHENZHEN, China, Jan. 19 /PRNewswire-Asia-FirstCall/ -- Universal Travel Group (NYSE: UTA) ("Universal Travel Group" or the "Company"), a leading travel services provider in China, today announced that it has entered into a Letter of Intent to acquire Hebei Tianyuan Travel Agency ("Tianyuan") for RMB 29 million (approximately $4.2 million), 80% of which shall be paid in cash and 20% of the consideration in shares of the Company's common stock. The purchase consideration may be subject to adjustment after the completion of acquisition audit on Tianyuan by the Company.
>
> Founded in 1999, Tianyuan was the first authorized travel agency in the Hebei Province in China. In addition, Tianyuan is the exclusive provider of travel agency services to Mount Lu (Lushan National Park), a domestic tourist attraction listed on the UNESCO World Heritage Site. Tianyuan was the organizer of the International Economy & Culture Communication Forum sponsored by the local government and the exclusive organizer of the Young Journalist Summer Camp sponsored by the Yanzhao Evening Paper. The Company believes that Tianyuan's

exclusive service with these regional sites and unique partnership with the government provide Tianyuan with an advantage to be a market leader in travel services in the region. Unaudited full year 2009 revenues and net income for Tianyuan are approximately $7.2 million and $0.7 million, respectively.

"This acquisition represents a further step in our expansion strategy of increasing our geographic coverage over the most popular national tourist destinations in China such as Mount Lu," said Ms. Jiangping Jiang, Chairwoman and Chief Executive Officer. "We look forward to leveraging our experience in providing high quality, comprehensive travel services with Tianyuan's unique regional tourism resources and we are confident that this acquisition will strengthen Universal Travel Group's domestic market presence and increase the Company's profitability in 2010."

24.     On January 26, 2010, the Company issued a press release entitled, "Universal Travel Group Announces Acquisition of Zhengzhou Yulongkang Travel Service Company." Therein, the Company, in relevant part, stated:

SHENZHEN, China, Jan. 26 /PRNewswire-Asia-FirstCall/ -- Universal Travel Group (NYSE: UTA) ("Universal Travel Group" or the "Company"), a leading travel services provider in China offering package tours, air ticketing, and hotel reservation services via the Internet and customer service representatives, announced today that it has entered into a Letter of Intent to acquire Zhengzhou Yulongkang Travel Service Company ("Zhengzhou Yulongkang") for RMB 39 million (approximately $5.7 million), 90% of which to be paid in cash and 10% of the purchase consideration in shares of the Company's common stock. The purchase consideration may be subject to adjustment after the completion of acquisition audit on Zhengzhou Yulongkang by the Company.

Zhengzhou Yulongkang was founded in 2000 in Zhengzhou, Henan Province. Zhengzhou Yulongkang has a team of experienced and knowledgeable tour guides that take tourists on more than ten proprietary regional routes and hundreds of points of interest. Zhengzhou

Yulongkang is a one-stop shop, providing comprehensive travel services and maintaining long-term cooperation with transportation agents, travel destinations, hotels, and air ticket agencies. In addition, Zhengzhou Yulongkang has developed outdoor team building programs in 2004 based on its chosen travel destination, Wengcheng Waterfall. Unaudited 2009 revenue and net income will be about $10.5 million and $0.86 million, respectively.

"Our recent acquisitions of travel service providers of national tourist destinations demonstrate our commitment to expand into domestic travel markets and raise awareness of our Company and the services we provide in these targetted regions. Zhengzhou Yulongkang's addition will further enhance Universal Travel Group's core business segments and complement our packaged tour business," said Ms. Jiangping Jiang, Chairwoman and Chief Executive Officer. "Through these acquisitions, we will strengthen our product portfolio, geographic coverage and brand awareness to build a larger network of customers. We believe we are strategically positioned to be in the forefront of the rising China travel market."

25.     On March 5, 2010, the Company issued a press release entitled,

"Universal Travel Group Announces Fourth Quarter and Full Year 2009 Results."

Therein, the Company, in relevant part, stated:

SHENZHEN, China, March 5 /PRNewswire-Asia-FirstCall/ -- Universal Travel Group (NYSE:UTA) ("Universal Travel Group" or the "Company"), a growing travel services provider in China offering package tours, air ticketing, and hotel reservation services online and via customer service representatives, today announced financial results for the fourth quarter and full year ended December 31, 2009.

Fourth Quarter 2009 Highlights
--      Revenue increased 16.1% year-over-year to $34.2 million
--      Gross profit increased 1.3% year-over-year to $10.1 million
--      Gross margin was 29.5%, compared to 33.8% in the prior year period
--      Income from operations was $7.5 million, compared to $8.2

million in the prior year period

-- Adjusted income from operations, which excludes the effect of non-cash charges related to stock-based compensation of $0.4 million, was $7.9 million, compared to $8.2 million in the prior year period(*)

-- GAAP net income from continuing operations was $5.2 million or $0.32 per diluted share, compared to $6.3 million or $0.44 per diluted share in the prior year period

-- Adjusted net income from continuing operations, which excludes the effect of non-cash charges related to the change in fair value of derivative liabilities of $0.3 million and stock-based compensation of $0.4 million, was $5.9 million, or $0.36 per diluted share, compared to $6.4 million, or $0.44 per diluted share, in the prior year period(*)

Full Year 2009 Highlights

-- Revenue increased 48.7% year-over-year to $97.9 million

-- Gross profit increased 43.8% year-over-year to $32.4 million

-- Gross margin was 33.1%, compared to 34.2% last year

-- GAAP income from operations increased 34.9% year-over-year to $24.2 million

-- Adjusted income from operations, which excludes the effect of non-cash charges related to stock-based compensation of $1.2 million, increased 39.7% year-over-year to $25.3 million(*)

-- GAAP net income from continuing operations was $11.3 million or $0.74 per diluted share, compared to $13.8 million or $1.07 per diluted share last year

-- Adjusted net income from continuing operations, which excludes the effect of non-cash charges related to the change in fair value of derivative liabilities of $6.8 million and stock-based compensation of $1.2 million, was $19.3 million, or $1.26 per diluted share, an increase of 38.1% compared to $14.0 million, or $1.09 per diluted share last year(*)

"Our fourth quarter and full year results reflect strong organic revenue growth," said Ms. Jiangping Jiang, Chairwoman and Chief Executive Officer. "The greatest impact to our financial performance is from the growth of our business volume, since the average prices of our travel products and commission rates were stable, and some of them even

decreased slightly during 2009. Our revenue growth reflects the continued development of the domestic tourism market in China and the strength of our operating platform. Universal Travel has a strong product portfolio, broad geographic coverage and a brand awareness that enable us to continue to expand our network of customers and remain at the forefront of the growing China travel market."

Fourth Quarter 2009 Financial Results

Revenue for the three months ended December 31, 2009, was $34.2 million compared to $29.4 million for the same period in 2008, an increase of approximately 16.1%. Revenue generated by the air cargo agency segment for the three months ended December 31, 2008 was $5.1 million. Excluding this segment, revenue generated from the current three segments was $24.4 million, a year- over-year increase of 40.3%. This increase in revenue was primarily due to the successful integration and cross selling among the Company's three business segments, which increased the Company's competitive position in the marketplace.

Revenue from air-ticketing was $6.6 million, compared to $5.1 million for the same period last year, an increase of 29.6%. This increase was mainly due to the increased demand for air passenger transportation.

Revenue generated by the Company's hotel reservation segment was $4.0 million compared to $3.8 million for the same period in 2008, an increase of 5.5%. This increase was due to the successful integration of the various business segments of the Company.

Revenue generated by package tours was $23.6 million compared to $18.2 million for the same period in 2008, an increase of 30.0%. This increase was primarily due to the increase in tourism demand and successful integration of the Company's various business segments and marketing channels.

Gross profit was $10.1 million compared to $9.9 million for three months ended December 31, 2008, an increase of 1.3%. Gross profit margin for the fourth quarter of 2009 was 29.5% compared to 33.8% for the same period last year. The decrease in gross profit margin was primarily because the packaged tour business, which has a lower profit

margin due to the way revenues are recognized, constituted a higher percentage of the Company's total revenues than during the prior year period.

Selling, general and administrative ("SG&A") expenses totaled $2.5 million compared to $1.7 million for the same period last year, an increase of 45.1%. The SG&A expenses were 7.4% of revenue for the three months ended December 31, 2009, compared to 5.9% for the same period last year. The increase in percentage was primarily due to higher amortization expenses related to the Company's employee stock incentive plan, higher marketing and rent expenses to support the increased sales volume, and additional professional fees.

Income from operations was $7.5 million compared to $8.2 million in the same period last year. The Company incurred non-cash charges related to stock-based compensation of $0.4 million in the fourth quarter of 2009 compared to $0.1 million in the prior year period. Excluding these non-cash charges, the Company's adjusted income from operations was $7.9 million for the fourth quarter of 2009, compared to $8.2 million in the prior year period. Adjusted operating margin was 23.1%(*).

Net income from continuing operations was $5.2 million, or $0.32 per diluted share, compared to $6.3 million, or $0.44 per diluted share, for the same period last year. Excluding the effect of non-cash charges related to the change in fair value of derivative liabilities of $0.3 million and stock-based compensation of $0.4 million, the Company's adjusted net income from continuing operations was $5.9 million, or $0.36 per diluted share, compared to $6.4 million, or $0.44 per diluted share, in the fourth quarter of 2008(*).

Full Year 2009 Financial Results

Revenue for full year 2009 was $97.9 million compared to $65.8 million in 2008, an increase of 48.7%. Revenue from air-ticketing was $17.5 million compared to $12.3 million last year, an increase of 42.0%. Revenue generated by the hotel reservation segment was $13.0 million compared to $8.3 million last year, an increase of 56.4%. Revenue generated by package tours was $67.3 million compared to $45.1 million last year, an increase of 49.1%.

Gross profit was $32.4 million compared to $22.5 million for full year 2008, an increase of 43.8%. Gross profit margin for the full year of 2009 was 33.1% compared to 34.2% last year.

SG&A expenses totaled $8.2 million compared to $4.6 million last year, an increase of 78.7%. SG&A expenses were 8.4% of revenue compared to 7.0% last year.

Income from operations increased 34.9% to $24.2 million from $17.9 million in the full year 2008. The Company incurred non-cash charges related to stock-based compensation in the full year 2009 of $1.2 million compared to $0.2 million last year.

Excluding these non-cash charge, the Company's adjusted income from operations would be $25.3 million for the full year 2009, an increase of 39.7% from last year. Adjusted operating margin was 25.8%(*).

Net income from continuing operations was $11.3 million compared to $13.8 million last year. The Company incurred non-cash charges related to the change in fair value of derivative liabilities of $6.8 million and stock-based compensation of $1.2 million in the full year 2009. Excluding these non-cash charges, adjusted net income from continuing operations would be $19.3 million, or $1.26 per fully diluted share, an increase of 38.1% from $14.0 million, or $1.09 per diluted share, in the full year 2008(*).

Financial Condition

Cash and cash equivalents were $36.7 million as of December 31, 2009. Current assets and current liabilities as of December 31, 2009, were $70.5 million and $6.3 million, respectively, yielding working capital of $64.2 million. The Company has no long-term debt. For the year ended December 31, 2009, net cash provided by operating activities was $11.5 million.

Recent Developments

--    In January 2010, the Company entered into a Letter of Intent to

acquire Zhengzhou Yulongkang Travel Service Company for RMB 39 million (approximately $5.7 million), 90% of which to be paid in cash and 10% of the purchase consideration in shares of the Company's common stock.

-- In January 2010, the Company entered into a Letter of Intent to acquire Hebei Tianyuan Travel Agency for RMB 29 million (approximately $4.2 million), 80% of which shall be paid in cash and 20% of the consideration in shares of the Company's common stock.

-- In December 2009, the Company entered into a Letter of Intent to acquire Huangshan Holiday Travel Service Company for RMB 20 million (approximately $2.9 million), 80% of which shall be paid in cash and 20% in shares of the Company's common stock.

-- In December 2009, the Company entered into definitive subscription agreements to sell to institutional investors an aggregate of 2,222,222 shares of its common stock at a price of $9.00 per share for gross proceeds of approximately $20.0 million. The net proceeds of the financing are being used for acquisitions and working capital. The sale of the common stock closed on December 15, 2009.

\*       \*       \*

Ms. Jiang commented, "We our optimistic about our business prospects. The travel market in China continues to show robust growth. We expect to see increasing sales and strong financial performance in 2010 as we integrate our recently announced acquisitions and as our comprehensive marketing initiatives continue to demonstrate positive results. In addition, the TRIPEASY Kiosks, which have shown promising results to date, will serve, together with our website and call center, to further integrate our air ticket sales, hotel room sales, and packaged tours businesses."

For the full year 2010, Universal Travel Group expects to achieve an organic growth rate of approximately 20% for revenues and net income.

26.    On March 5, 2010, UTG filed its Annual Report with the SEC on Form

10-K for the 2009 fiscal year.  The Company's Form 10-K was signed Defendants

Jiang and Zhang, and contained the Company's financial results for the 2009 fiscal

year announced that day.  The Company's Form 10-K also contained Sarbanes-Oxley

required certifications, signed by Defendants Jiang and Zhang, who certified:

    1.    I have reviewed this annual report on Form 10-K of Universal Travel Group.

    2.    Based on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this annual report;

    3.    Based on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this annual report;

    4.    The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

        a)    designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared; and

        b)    designed such internal controls over financial reporting, or caused such internal controls over financial reporting to be

designed under our supervision, to provide reasonable assurances regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles; and

c) evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d) disclosed in this report any change in the registrant's internal controls over financial reporting that occurred during the registrant's fiscal quarter ended September 30, 2009, that has materially affected or is reasonably likely to materially affect the registrant's internal controls over financial reporting.

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent functions):

a) all significant deficiencies and material weakness in the design or operation of internal controls over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial data; and

b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

27. Additionally, the Company's Annual Report on Form 10-K filed with the SEC on March 5, 2010, in relevant part, stated:

On January 19, 2010, we entered into a letter of intent to acquire Hebei Tianyuan Travel Agency ("Tianyuan") for RMB 29 million (approximately $4.2 million), 80% of which shall be paid in cash and 20% of the consideration in shares of the Company's common stock. The purchase consideration may be subject to adjustment after completion of acquisition audit on Tianyuan by the Company. Founded in 1999, Tianyuan was the first authorized travel agency in the Hebei Province in China. In addition, Tianyuan is the exclusive provider of travel agency services to Mount Lu and Lushan National Park, both domestic tourist attractions listed on the UNESCO World Heritage Site. Tianyuan was the organizer of the International Economy & Culture Communication Forum sponsored by the local government and the exclusive organizer of the Young Journalist Summer Camp sponsored by the Yanzhao Evening Paper. We believe that Taiyuan's exclusive service with these regional sites and unique partnership with the government provides Tianyuan with an advantage to be a market leader in travel services in the region.

\*     \*     \*

On January 26, 2010, we entered into a letter of intent to acquire Zhengzhou  Yulongkang Travel Service Company ("Zhengzhou Yulongkang") for RMB 39 million (approximately $5.7 million), 90% of which to be paid in cash and 10% of the purchase consideration in shares of the Company's common stock. The purchase consideration may be subject to adjustment after the completion of acquisition audit on Zhengzhou Yulongkang by the Company. Zhengzhou Yulongkang Travel Service Company was established in 2000 in Zhengzhou, Henan Province of China. The company currently has a management team of 25 people and over 60 tour organizers and guides. The Company provides comprehensive travel services and maintains long-term cooperation relations with transportation agents, travel destinations, hotels, and air ticket agencies. Its regional tour routes include "Charming Tibet", "Winter Hot Spring", "Passion Ski Trip", etc. Zhengzhou Yulongkang Travel Service Company has received a series of industry and corporate awards from 2003 to 2006.

28.    On March 31, 2010, the Company issued a press release entitled,

"Universal Travel Group Completes Previously Announced Acquisitions and Updates

Guidance." Therein, the Company, in relevant part, stated:

> SHENZHEN, China, March 31 /PRNewswire-Asia-FirstCall/ -- Universal Travel Group (NYSE:UTA) ("Universal Travel Group" or the "Company"), a leading travel services provider in China, today announced that the Company has completed the previously announced acquisitions of Huangshan Holiday Travel Service Co., Ltd. ("Huangshan Holiday"), Hebei Tianyuan International Travel Agency Co., Ltd. ("Tianyuan"), and Zhengzhou Yulongkang Travel Agency Co., Ltd. ("Yulongkang").
>
> The Company acquired Huangshan Holiday for RMB 20 million (approximately $2.9 million), of which 80% is in cash and 20% in stock; Tianyuan for RMB 30 million (approximately $4.4 million), of which 80% is in cash and 20% in stock; and Yulongkang for RMB 39 million (approximately $5.7 million), of which 90% is in cash and 10% in stock.
>
> Huangshan Holiday provides comprehensive travel services in the Huangshan District in the Anhui Province of China. Huangshan, a national geological park and UNESCO World Heritage Site, is one of China's most popular travel destinations, with over eight million tourists annually. Huangshan Holiday provides guided and self-guided package tours and airline and hotel reservation services for both leisure and business travelers. Huangshan Holiday serves as the exclusive hotel reservation agency for several major online travel service providers in China and has an over 70% share of the mid- to high-end hotel reservation market in the Huangshan Tourism District.
>
> Tianyuan was founded in 1999 and was the first authorized travel agency in the Hebei Province in China. In addition, Tianyuan is the exclusive provider of travel agency services to Mount Lu and Lushan National Park, a domestic tourist attraction listed on the UNESCO World Heritage Site. Tianyuan's exclusive service with these regional sites and unique partnership with the government provide Tianyuan with an advantage to be a market leader in travel services in the region.
>
> Yulongkang provides comprehensive travel services and maintains

long-term cooperation agreements with transportation agents, travel destinations, hotels, and air ticket agencies. In addition, Zhengzhou Yulongkang has developed outdoor team building programs based on its main travel market which is the Wengcheng Waterfall.

"We are pleased to have completed our recently announced strategic acquisitions," said Ms. Jiangping Jiang, Chairwoman and Chief Executive Officer. "These acquisitions of travel service providers for national tourist destinations in China demonstrate our commitment to expanding into additional domestic travel markets and raise the awareness of our Company and the services we provide in these targeted regions. Through these acquisitions we are strengthening our product portfolio, geographic coverage and brand awareness to build a larger network of customers. Overall, we believe these acquisitions will help us to strategically position Universal Travel Group to be in the forefront of the growing China travel market."

The Company also announced that the financial results from these three acquisitions will be included in the Company's quarterly report for the three months ended March 31, 2010. In addition, as a result of the synergy from these three acquisitions, for full year 2010, the Company expects to achieve a growth rate range of between 45% and 55% in both revenues and net income, excluding the effect of non-cash charges related to the change in fair value of derivative liabilities and stock-based compensation.

29.     On May 4, 2010, the Company issued a press release entitled, "Universal Travel Group Announces Intention to Acquire Four Travel Agencies for a Total Purchase Consideration of $19.5 Million." Therein, the Company, in relevant part, stated:

SHENZHEN, China, May 4 /PRNewswire-Asia-FirstCall/ -- Universal Travel Group (NYSE:UTA) ("Universal Travel Group" or the "Company"), a leading travel services provider in China, today announced that the Company has entered into letters of intent to acquire four travel agency businesses in China -- Tianjin Hongxun Aviation Agency Co., Ltd. ("Tianjin Hongxun), Shanxi Jinyang Travel Agency

Co., Ltd. ("Shanxi Jinyang"), Kunming Business Travel Agency Co., Ltd. ("Kunming Business Travel"), and Shandong Century Aviation Development Co., Ltd. ("Shandong Century") -- for a total purchase consideration of $19.5 million. The combined unaudited 2009 revenue and net income for the four travel agencies were $23.0 million and $3.0 million, respectively. The final purchase consideration each of these companies may be subject to adjustment after completion of due diligence by the Company.

Shanxi Jinyang was founded in 1988 in Taiyuan, Shanxi Province and is one of the largest travel agencies in Shanxi Province in terms of tourist volume and revenues. Shanxi Jinyang provides comprehensive travel services and has good business relationships with travel destinations, hotels, and air ticketing agencies. Unaudited 2009 revenue and net income were $5.6 million and $0.4 million, respectively. We plan to acquire Shanxi Jinyang for $2.3 million, 90% of which shall be paid in cash and 10% in shares of the Company's common stock.

Tianjin Hongxun was founded in 1999 in Tianjin and is a leading airline ticket agency in its region, with supplementary hotel, train and car reservation service offerings. Tianjin Hongxun has a customer database of approximately 400,000 that consists of both individual tourists and businesses and has an average daily volume of 100,000 inbound calls and over 2,000 tickets issued. Unaudited 2009 revenue and net income were $3.7 million and $0.9 million, respectively. We plan to acquire Tianjin Hongxun for $5.9 million, 65% of which shall be paid in cash and 35% in shares of the Company's common stock.

Kunming Business Travel was founded in 1993 in Kunming, Yunnan Province and is the premier golf travel service agency in its region. Kunming Business Travel has partnerships with seven golf clubs and provides services, including reservations, event planning, hosting business trips and golf competitions. Kunming Business Travel is the only professional golf travel service provider in the Yunnan Province. Unaudited 2009 revenue and net income were $9.4 million and $0.9 million, respectively. We plan to acquire Kunming Business Travel for $5.7 million, 90% of which shall be paid in cash and 10% in shares of the Company's common stock.

Shandong Century, founded in 1996, has the largest electronic ticket

reservation platform and is the largest airline ticket agency in the Shandong Province. Its major business lines include air ticketing, hotel reservation, train ticketing, group tours, and business cargo services. Shandong Century has a call center with 100 customer service representatives and an average daily volume of 2,500 ticket reservations. Unaudited 2009 revenue and net income were $4.4 million and $0.8 million, respectively. We plan to acquire Shandong Century for $5.6 million, 65% of which shall be paid in cash and 35% in shares of the Company's common stock.

"We are continuing to capitalize on the fast growing China travel market through organic growth and strategic acquisitions," said Ms. Jiangping Jiang, Chairwoman and Chief Executive Officer. "After the acquisition of these four travel agencies, we will have expanded our geographic coverage to ten provinces in mainland China and the variety of services we offer our clients. We are confident these acquisitions, once complete, will have a positive impact on our top and bottom line in 2010."

30.     On May 10, 2010, UTG filed its Quarterly Report with the SEC on Form 10-Q for the 2010 fiscal first quarter. The Company's Form 10-Q was signed by Defendants Jiang and Zhang, and contained the Company's financial results for the 2010 fiscal first quarter. The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, substantially similar to the certifications contained in ¶26, *supra*. Therein, the Company, in relevant part, stated:

On March 4, 2010, the company announced that it has entered into letters of intent to acquire four travel agency businesses in China – Tianjin Hongxun Aviation Agency Co., Ltd. ("Tianjin Hongxun"), Shanxi Jinyang Travel Agency Co., Ltd. ("Shanxi Jingyang"), Kunming Business travel Agency Co., Ltd. ("Kunming Business Travel"), and Shandong Century Aviation Development Co., Ltd. ("Shandong Century") – for a total purchase consideration of $19.5 million. The combined unaudited 2009 revenue and net income for the four travel agencies were $23.0 million and $3.0 million, respectively. The final purchase consideration each of these companies may be subject to

1

adjustment after completion of the diligence by the Company.

2

\*       \*       \*

3

4

Recently in May 2010, we also announced our intention of acquiring four more travel agency businesses in the People's Republic of China – Tianjin Hongxun Aviation Agency Co., Ltd. ("Tianjin Hongxun"), Shanxi Jinyang Travel Agency Co., Ltd. ("Shanxi Jinyang"), Kunming Business Travel Agency Co., Ltd. ("Kunming Business Travel"), and Shandong Century Aviation Development Co., Ltd. ("Shandong Century"). We believe that we are able to improve the sales volume and operation efficiency of these new acquisitions, and on the other hand, they will also help lift the sales volume and operation efficiency of our existing subsidiaries.

5

6

7

8

9

10

11

31.    On May 11, 2010, the Company issued a press release entitled,

12

"Universal Travel Group Announces First Quarter 2010 Results."   Therein, the

13

14

Company, in relevant part, stated:

15

SHENZHEN, China, May 11 /PRNewswire-Asia-FirstCall/ -- Universal Travel Group (NYSE:UTA) ("Universal Travel Group" or the "Company"), a growing travel services provider in China offering package tours, air ticketing, and hotel reservation services online and via customer service representatives, today announced financial results for the first quarter ended March 31, 2010.

16

17

18

19

20

First Quarter 2010 Highlights
--    Revenue increased 68.5% year-over-year to $26.1 million
--    Excluding contribution of newly acquired businesses, revenue increased 34.5% year-over-year
--    Gross profit increased 39.5% year-over-year to $8.5 million
--    Gross margin was 32.5%, compared to 39.3% in the prior year period
--    Income from operations was $5.4 million, compared to $4.2 million in the prior year period
--    Adjusted income from operations, which excludes the effect of

21

22

23

24

25

26

27

28

non-cash charges related to stock-based compensation of $0.3 million, was $5.8 million, compared to $4.4 million in the prior year period*

-- GAAP net income from continuing operations was $4.1 million or $0.23 per diluted share, compared to $3.2 million or $0.23 per diluted share in the prior year period

-- Adjusted net income from continuing operations, which excludes the effect of the non-cash gain on change in fair value of derivative liabilities of $0.1 million and the non-cash charge related to stock-based compensation of $0.3 million, was $4.3 million, or $0.24 per diluted share, compared to $3.3 million, or $0.24 per diluted share, in the prior year period*

-- Acquired three travel agencies in China

"Our strong first quarter performance was driven by organic revenue growth and the financial results from our three recent acquisitions," said Ms. Jiangping Jiang, Chairwoman and Chief Executive Officer. "Our organic sales growth was primarily driven by our successful efforts in cross-marketing and cross-selling our travel related products across our three business segments, along with the strong demand for travel as a result of the healthy Chinese economy and the continuing positive impact from the Chinese government's stimulus package. We also benefited from increased brand awareness from both our online presence and from the deployment of our TRIPEASY kiosks."

First Quarter 2010 Financial Results

Revenue for the three months ended March 31, 2010, was $26.1 million compared to $15.5 million for the same period in 2009, an increase of 68.5%. In March 2010, the Company completed the acquisitions of Huangshan Holiday Travel Service Co., Ltd. ("Huangshan Holiday"), Hebei Tianyuan International Travel Agency Co., Ltd. ("Tianyuan"), and Zhengzhou Yulongkang Travel Agency Co., Ltd. ("Yulongkang"). The revenue contribution from these three newly acquired subsidiaries in the first quarter of 2010 was $5.3 million, or 20.2% of the Company's total revenues for the quarter. Excluding the contribution of these newly acquired businesses, revenue for the first quarter of 2010 was $20.8 million, an increase of 34.5% from $15.5 million in the same period last

year.

Revenue from air-ticketing was $4.4 million, compared to $2.8 million for the same period last year, an increase of 61.3%. This increase was mainly due to the increased demand for air passenger transportation and sales from the Company's Chongqing subsidiary as consumers across China are traveling more as the domestic economy recovers. In order to capitalize on the opportunities arising from the economic promotion by the Chinese government of the mid and western regions of the PRC, the Company strategically set up Chongqing Universal Travel E-Business Co., Ltd. to strengthen its presence in that region in the second quarter of 2009. The Chongqing subsidiary began generating revenues in the third quarter of 2009.

Revenue generated by the Company's hotel reservation segment was $3.2 million compared to $2.5 million for the same period in 2009, an increase of 25.2%. This increase was also due to healthy market demand and the Company's ability to successfully cross market across its three business segments.

Revenue generated by package tours was $18.5 million compared to $10.2 million for the same period in 2009, an increase of 81.0% from the same period last year. This increase was a result of the three recent acquisitions, the recovery of the domestic economy, the positive impact from the government's stimulus package, and the Company's strong efforts in carrying our various marketing programs and campaigns.

Gross profit was $8.5 million compared to $6.1 million for the same period last year, an increase of 39.5%. Gross profit margin for the first quarter of 2010 was 32.5% compared to 39.3% for the same period last year. The decrease in gross profit margin was primarily because the packaged tour business, which has a lower profit margin due to the way revenues are recognized, constituted a higher percentage of the Company's total revenues than during the prior year period.

Selling, general and administrative ("SG&A") expenses totaled $3.1 million compared to $1.9 million for the same period last year, an increase of 65.1%. The SG&A expenses were 11.7% of revenue for the

three months ended March 31, 2010, compared to 12.0% for the same period last year. General increase in selling, general and administrative expenses are in tandem with the growth in business operations during the three months ended March 31, 2010, as compared to the same period of last year. During the first quarter of 2010, the Company incurred extra professional fees and consolidation expenses for the three acquisitions. In addition, the slight increase in percentage was also due to the issuance of stock based compensation in early 2009 and the amortization of such stock based compensation, whereas the stock based compensation is less significant during the same period last year.

Income from operations was $5.4 million compared to $4.2 million in the same period last year. The Company incurred non-cash charges related to stock- based compensation of $0.3 million in the first quarter of 2010 compared to $0.2 million in the prior year period. Excluding these non-cash charges, the Company's adjusted income from operations was $5.8 million for the first quarter of 2010, compared to $4.4 million in the prior year period. Adjusted operating margin was 22.1%.*

Net income from continuing operations was $4.1 million, or $0.23 per diluted share, compared to $3.4 million, or $0.23 per diluted share, for the same period last year. Excluding the effect of the non-cash gain on change in fair value of derivative liabilities of $0.1 million and the non-cash charge related to stock-based compensation of $0.3 million, the Company's adjusted net income from continuing operations was $4.3 million, or $0.24 per diluted share, compared to $3.3 million, or $0.24 per diluted share, in the first quarter of 2009.*

\*       \*       \*

Financial Condition

Cash and cash equivalents were $37.8 million as of March 31, 2010. Current assets and current liabilities as of March 31, 2010, were $69.8 million and $11.0 million, respectively, yielding working capital of $58.8 million. The Company has no long-term debt. For the quarter ended March 31, 2010, net cash provided by operating activities was $6.5 million.

Recent Developments

-- In March 2010, the Company acquired the following three travel agencies in China: (i) Huangshan Holiday for approximately $2.9 million, of which 80% was in cash and 20% in stock; (ii) Tianyuan for approximately $4.4 million, of which 80% was in cash and 20% in stock; and (iii)Yulongkang for approximately $5.7 million, of which 90% was in cash and 10% in stock.

-- In April 2010, the Company entered into letters of intent to acquire the following four travel agencies in China for a total purchase consideration of $19.5 million: (i) Tianjin Hongxun Aviation Agency Co., Ltd.; (ii) Shanxi Jinyang Travel Agency Co., Ltd.; (iii) Kunming Business Travel Agency Co., Ltd.; and (iv) Shandong Century Aviation Development Co., Ltd. The combined unaudited 2009 revenue and net income for the four travel agencies were $23.0 million and $3.0 million, respectively.

Business Outlook

Ms. Jiang commented, "We are optimistic about our business prospects. Our main base of operations in Shenzhen in the Pearl River Delta region of China continues to perform well and the expansion of our business into Western China, through our second home base in the Chongqing Delta region is ramping up nicely. We are very pleased with our recently completed acquisitions as they were made at attractive valuations and enable Universal Travel Group to expand into additional under-penetrated domestic travel markets.

"Our three newly acquired businesses are traditional travel agencies with a minimal online presence and the bulk of their business comes from selling package tours. As such, we see many opportunities to improve sales and profitability by expanding their online bookings and air ticketing and hotel reservation sales as we integrate these businesses and their customers into our wider travel platform over the coming weeks and months. We expect this initiative not only to increase sales, but also to help improve overall margin performance given that online bookings, air ticketing and hotel reservations all have higher margins than sales via customer service representatives and, given the way revenues are

recognized, sales of package tours. We expect to see the results of our efforts as the year progresses and expect stronger overall margin performance in the second half of 2010 as a result of these initiatives, but also because the package tour business is seasonal and the third and fourth quarters typically outperform the first two quarters of the year.

"We recently announced our intent to acquire an additional four travel agencies in China. These companies have a greater focus on air ticketing and hotel reservations versus package tours. Following the closing of these acquisitions, our geographic coverage will have expanded to ten provinces in mainland China and we are confident that these acquisitions will have a positive impact on our top and bottom line performance for the year and beyond."

For full year 2010, the Company reiterates its previously issued guidance of achieving a growth rate range of between 45% and 55% in both revenues and net income, excluding the effect of non-cash charges related to the change in fair value of derivative liabilities and stock-based compensation. This guidance does not include any impact from the four companies the Company has announced it is in the process of acquiring.

32.    On June 16, 2010, the Company issued a press release entitled, "Universal Travel Group Prices $20 Million Offering of Common Stock." Therein, the Company, in relevant part, stated:

SHENZHEN, China, June 16 /PRNewswire-Asia-FirstCall/ -- Universal Travel Group (NYSE:UTA) ("Universal Travel Group" or the "Company"), a leading travel services provider in China, today announced the pricing of a public offering of 2,857,143 shares of its common stock at $7.00 per share. The offering is expected to close on Monday, June 21, 2010.  In addition, Universal Travel Group has granted the underwriters a 30-day option to purchase up to an additional 428,572 shares of its common stock to cover over-allotments, if any. Brean Murray, Carret & Co., LLC is acting as sole book running manager and Rodman & Renshaw, LLC is acting a co-manager for the offering.

"We are pleased to announce the pricing of this transaction and appreciate the support of our new and existing investors," commented Ms. Jiangping Jiang, Chairwoman and Chief Executive Officer. "The proceeds from this financing will be used to fund the cash portion of the four recently announced acquisitions and for working capital to expand our core business segments. We believe the offering will accelerate the closing of these acquisitions and make a positive contribution to our revenue growth, increased earnings and EPS performance."

33.    On June 22, 2010, the Company issued a press release entitled, "Universal Travel Group Closes $20 Million Offering of Common Stock." Therein, the Company, in relevant part, stated:

SHENZHEN, China, June 22 /PRNewswire-Asia-FirstCall/ -- Universal Travel Group (NYSE:UTA) ("Universal Travel Group" or the "Company"), a leading travel services provider in China, today announced that on June 21, 2010 the Company closed the common stock offering announced on June 16, 2010. In this transaction, the Company issued 2,857,143 shares of its common stock at $7.00 per share for an aggregate amount of $20 million. Brean Murray, Carret & Co. acted as sole book running manager and Rodman & Renshaw, LLC acted as co-manager for the offering.

The proceeds from this financing will be used to fund the cash portion of its four recently announced acquisitions and for working capital to expand the Company's core business segments.

The shares in this offering are being issued under a shelf registration statement declared effective by the Securities and Exchange Commission on November 5, 2009. A prospectus supplement related to the public offering will be filed with the Securities and Exchange Commission.

34.    On June 30, 2010, the Company issued a press release entitled,

"Universal Travel Group Completes Acquisitions of Shanxi Jinyang Travel Agency and Kunming Business Travel Agency."  Therein, the Company, in relevant part, stated:

> SHENZHEN, China, June 30 /PRNewswire-Asia-FirstCall/ -- Universal Travel Group (NYSE:UTA) ("Universal Travel Group" or the "Company"), a leading travel services provider in China offering package tours, air ticketing, and hotel reservation services, today announced that the Company has completed the previously announced acquisitions of Shanxi Jinyang Travel Agency Co., Ltd. ("Shanxi Jinyang") and Kunming Business Travel Agency Co., Ltd. ("Kunming Business Travel") for $8.0 million, of which 90% was paid in cash and 10% in stock. The combined audited 2009 revenue and net income for the two travel agencies was $15.3 million and $1.3 million, respectively.
>
> Shanxi Jinyang was founded in 1988 in Taiyuan, Shanxi Province and is one of the largest travel agencies in Shanxi Province in terms of tourist volume and revenues. Shanxi Jinyang provides comprehensive travel services and has established business relationships with local travel destinations, hotels, and air ticketing agencies.
>
> Kunming Business Travel was founded in 1993 in Kunming, Yunnan Province and is the premier golf travel service agency in its region.
>
> Kunming Business Travel has partnerships with seven golf clubs and provides services, including reservations, event planning, hosting business trips and golf competitions. Kunming Business Travel is the only professional golf travel service provider in the Yunnan Province.
>
> With the closing of these two acquisitions, assuming no further dilutive effect from financings or acquisitions, the Company now expects to achieve between $145.0 million and $155.0 million in revenue, $27.0 million and $28.0 million in net income, and $1.35 and $1.40 in diluted EPS in the fiscal year 2010, excluding the effect of non-cash charges related to the change in fair value of derivative liabilities and stock-based compensation.

"We are very pleased to have closed the first two of our recently announced four acquisitions on schedule," said Ms. Jiangping Jiang, Chairwoman and Chief Executive Officer. "These acquisitions of travel service providers will help us to further expand our geographic coverage in the fast growing domestic travel market. We believe Universal Travel Group's comprehensive service platform and broad customer reach will enable us to further improve their earnings and profit margins."

35.    On August 10, 2010, the Company issued a press release entitled, "Universal Travel Group Announces Second Quarter 2010 Results." Therein, the Company, in relevant part, stated:

SHENZHEN, China, Aug. 10 /PRNewswire-Asia-FirstCall/ -- Universal Travel Group (NYSE:UTA) ("Universal Travel Group" or the "Company"), a leading travel services provider in China offering package tours, air ticketing, and hotel reservation services online and via customer service representatives, today announced financial results for the three and six months ended June 30, 2010.

Second Quarter 2010 Highlights
--   Revenue increased 99.6% year-over-year to $36.7 million
--   Excluding contribution of newly acquired businesses, revenue

     increased 36.4% year-over-year
--   Gross profit increased 61.6% year-over-year to $10.6 million
--   Gross margin was 28.7%, compared to 35.5% in the prior year period
--   Income from operations increased 42.8% to $7.1 million
--   Adjusted income from operations, which excludes the effect of non-cash charges related to stock-based compensation of $0.3 million, increased 40.4% to $7.4 million(*)
--   GAAP net income from continuing operations was $6.0 million or $0.33 per diluted share, compared to a loss of $1.9 million or $0.13 per diluted share in the prior year period
--   Adjusted net income from continuing operations, which excludes the effect of the non-cash gain on change in fair value of

derivative liabilities of $0.8 million and the non-cash charge related to stock-based compensation of $0.3 million, increased 29.3% to $5.5 million, or $0.30 per diluted share(*)

--  Acquired two travel service providers in China

"We are pleased to announce another quarter of strong growth in our business," said Ms. Jiangping Jiang, Chairwoman and Chief Executive Officer. "Our second quarter sales grew both organically and via our recently closed acquisitions. During the quarter, we saw strong demand for our travel services as the Chinese economy continues to expand, providing more and more consumers in China with disposal income for travel and tourism. We continue to see success in cross-marketing and selling our travel related products across our three business segments and increased brand awareness from our online presence and the deployment of our TRIPEASY kiosks."

Second Quarter 2010 Financial Results

Revenue for the three months ended June 30, 2010, was $36.7 million compared to $18.4 million for the same period in 2009, an increase of 99.6%. In March 2010, the Company completed the acquisitions of Huangshan Holiday Travel Service Co., Ltd., Hebei Tianyuan International Travel Agency Co., Ltd., and Zhengzhou Yulongkang Travel Agency Co., Ltd. In June 2010, the Company completed the

acquisitions of Shanxi Jinyang Travel Agency Co., Ltd. and Kunming Business Travel Agency Co., Ltd. The revenue contribution from these five newly acquired businesses in the second quarter of 2010 was $11.6 million, or 31.7% of the Company's total revenues for the quarter. Excluding the contribution of these newly acquired businesses, revenue for the second quarter of 2010 was $25.1 million, an increase of 36.4% from $18.4 million in the same period last year.

Revenue from air-ticketing was $6.0 million, compared to $3.3 million for the same period last year, an increase of 82.3%. This increase was mainly due to increased demand for air passenger transportation and higher ticket prices.

Revenue generated by the Company's hotel reservation segment was $3.0 million compared to $2.7 million for the same period in 2009, an increase of 11.2%. This increase was mainly due to healthy market demand and the Company's ability to successfully cross-market across its three business segments.

Revenue generated by package tours was $27.7 million compared to $12.4 million for the same period in 2009, an increase of 123.6% from the same period last year. This increase was primarily the result of the five recent acquisitions, the recovery of the domestic economy, the positive impact from the government's stimulus package, and the Company's strong efforts in carrying out various marketing programs.

Gross profit was $10.6 million compared to $6.5 million for the same period last year, an increase of 61.6%. Gross profit margin was 28.7% compared to 35.5% for the same period last year. The decrease in gross profit margin was primarily because the packaged tour business, which has a lower profit margin due to the way revenues are recognized, constituted a higher percentage of the Company's total revenues than during the prior year period.

Selling, general and administrative ("SG&A") expenses totaled $3.5 million compared to $1.6 million for the same period last year, an increase of 121.2%. The SG&A expenses were 9.4% of revenue compared to 8.5% for the same period last year. The increase in SG&A expenses is in connection with the growth in business operations during the three months ended June 30, 2010, as compared to the same period of last year. In addition, during the second quarter of 2010, the Company incurred extra professional fees and consolidation expenses related to the businesses it acquired, as well as from the $20 million common stock offering in June. The Company also incurred increased advertising expenses this quarter relative to the same period last year. In addition, in the second half of 2009 the Company established two subsidiaries (Chongqing Universal Travel E-Business Co., Ltd and Shenzhen Universal Travel Agency Co. Ltd.) and depreciation and amortization expenses for these subsidiaries have been taken into account since the third quarter of 2009.

Income from operations was $7.1 million compared to $5.0 million in the same period last year, an increase of 42.8%. The Company incurred non-cash charges related to stock-based compensation of $0.3 million in the second quarter of 2010, the same amount as in the prior year period. Excluding these non-cash charges, the Company's adjusted income from operations was $7.4 million for the second quarter of 2010, compared to $5.3 million in the prior year period, an increase of 40.4%. Adjusted operating margin was 20.2%.(*)

Net income from continuing operations was $6.0 million, or $0.33 per diluted share, compared to a loss of $1.9 million, or $0.13 per diluted share, for the same period last year. Excluding the effect of the non-cash gain on change in fair value of derivative liabilities of $0.8 million and the non-cash charge related to stock-based compensation of $0.3 million, the Company's adjusted net income from continuing operations was $5.5 million, or $0.30 per diluted share, compared to $4.3 million, or $0.30 per diluted share, in the second quarter of 2009.(*)

Ms. Jiang added, "Our bottom line performance benefited from our strong sales growth and higher margins in our air ticketing business as airlines in China increased prices in response to the booming travel market. This was offset by an increased proportion of our sales coming from package tours, which have a lower profit margin due to the way revenues are recognized, as well as from lower margins when compared

to last year in our hotel reservation segment and our package tour business. The slight decrease in our hotel reservation margin was due to a year-over-year reclassification of costs. The decrease in margin in our package tour business was the result of the five travel service providers

we acquired having lower margins than our existing business. Although currently these businesses have lower profit margins than our existing business, we expect their margin contribution to improve as we integrate them into our platform, and their strong local networks are critical in our nationwide expansion strategy."

\*       \*       \*

Six Months Results

Revenue for the six months ended June 30, 2010, was $62.9 million compared to $33.9 million for the same period in 2009, an increase of 85.4%. The revenue contribution from the Company's five newly acquired businesses in the first half of 2010 was $16.9 million, or 26.9% of the Company's total revenues for the first half. Excluding the contribution of these newly acquired businesses, revenue for the first half of 2010 was $46.0 million, an increase of 35.5% from $33.9 million in the same period last year.

Revenue from air-ticketing was $10.4 million, compared to $6.0 million for the same period last year, an increase of 72.7%. Revenue generated by the Company's hotel reservation segment was $6.2 million compared to $5.2 million for the same period in 2009, an increase of 17.9%. Revenue generated by package tours was $46.3 million compared to $22.6 million for the same period in 2009, an increase of 104.3% from the same period last year.

Gross profit was $19.1 million compared to $12.3 million for the same period last year, an increase of 54.9%. Gross profit margin was 30.3% compared to 36.3% for the same period last year.

Selling, general and administrative ("SG&A") expenses totaled $6.5 million compared to $3.1 million for the same period last year, an increase of 110.6%. The SG&A expenses were 10.4% of revenue compared to 9.1% for the same period last year.

Income from operations was $12.5 million compared to $9.2 million in the same period last year, an increase of 36.1%. The Company incurred non-cash charges related to stock-based compensation of $0.7 million in the first half of 2010 compared to $0.5 million in the prior year period. Excluding these non-cash charges, the Company's adjusted income from operations was $13.2 million for the first half of 2010, compared to $9.7 million in the prior year period, an increase of 36.2%. Adjusted operating margin was 21.0%.(*)

Net income from continuing operations was $10.1 million, or $0.57 per diluted share, compared to $1.4 million, or $0.10 per diluted share, for the same period last year. Excluding the effect of the non-cash gain on change in fair value of derivative liabilities of $0.9 million and the non-cash charge related to stock-based compensation of $0.7 million, the Company's adjusted net income from continuing operations was $9.9 million, or $0.55 per diluted share, compared to $7.6 million, or $0.53 per diluted share, in the first half of 2009.(*)

\*     \*     \*

Financial Condition

Cash and cash equivalents were $43.6 million as of June 30, 2010. Current assets and current liabilities as of June 30, 2010, were $86.2 million and $10.8 million, respectively, yielding working capital of $75.4 million. The Company has no long-term debt. For the six months ended June 30, 2010, net cash provided by operating activities was $4.5 million.

Recent Developments
--   In July 2010, the Company announced a partnership with Agoda, a subsidiary of Priceline.com, to strengthen its hotel reservation business segment and upgrade its website, http://www.cnutg.com

Under the agreement, Universal Travel Group will offer its customers access to Agoda's international network of hotels. Through the updated cnutg.com website, travelers will be able to enjoy special Agoda promotions and instant confirmation at tens of thousands of hotels worldwide.

--   In June 2010, the Company acquired Shanxi Jinyang Travel and Kunming Business Travel for $8.0 million, of which 90% was paid in cash and 10% in stock.
--   In June 2010, the Company closed a common stock offering and issued 2,857,143 shares of its common stock at $7.00 per share for an aggregate amount of $20 million. The proceeds from this financing were used to fund the cash portion of the Company's

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

two recently closed acquisitions and are expected to be used to fund the cash portion of he two acquisitions that have been announced but have not yet closed (Tianjin Hongxun Aviation Agency Co., Ltd. and Shandong Century Aviation Development Co., Ltd.) as well as for working capital to expand the Company's core business segments.

Business Outlook

Ms. Jiang commented, "In June, a number of Chinese airlines reported that they were authorized to cut the commission paid to travel agencies. Currently there has been no major impact on our existing business since the airlines planned to cut only the commission rates for a few flights departing from Beijing and Shanghai. Based on our analysis of air ticket booking habits in China, we believe that in the coming years the airlines will continue to heavily rely on travel agencies and pay travel agency commissions when selling tickets. Furthermore, we believe that any eventual commission rate cuts will serve to accelerate the consolidation of the travel services industry in China. We expect Universal Travel Group to be a beneficiary of any such consolidation as we believe the larger and more efficient travel service providers will gain more market share and the smaller and weaker players would be hurt most from any further commission rate cuts.

"As part of our strategy to position ourselves as a leader in the fast growing and consolidating China travel market, we closed two acquisitions of travel service providers in the second quarter, which together with our three acquisitions in the first quarter, further expanded our geographic reach. We believe our comprehensive travel service platform and broad customer reach will enable us to improve the sales

volume and operating efficiency of these new acquisitions. We also expect these newly acquired businesses to help our existing business by broadening the travel services we offer our customers. With a higher volume of bookings from our acquired businesses, our bargaining power with airlines and hotels should also benefit. Overall, we expect improved sales, margins and earnings as we fully integrate these businesses into our

platform.

"Finally, we are very excited about our recently announced partnership with Agoda, a subsidiary of Priceline.com. Under the partnership agreement, we offer our customers access to Agoda's international network of hotels. Through our website, travelers will be able to enjoy special Agoda promotions and instant confirmation at tens of thousands of hotels worldwide. Also through this partnership, Agoda intends to increase its exposure in the large Chinese travel market. This partnership offers us the opportunity to work with one of the world's largest online hotel reservation agencies and further strengthen our hotel reservation segment. We intend to leverage Agoda's global brand awareness and look forward to a higher volume of hotel reservations."

As previously announced, for full year 2010, the Company expects to achieve between $145.0 million and $155.0 million in revenue, $27.0 million and $28.0 million in net income, and $1.35 and $1.40 in diluted EPS, excluding the effect of non-cash charges related to the change in fair value of derivative liabilities and stock-based compensation and assuming no further dilutive effect from financings or acquisitions.

36.     On August 10, 2010, UTG filed its Quarterly Report with the SEC on Form 10-Q for the 2010 fiscal second quarter. The Company's Form 10-Q was signed by Defendants Jiang and Zhang, and reaffirmed the Company's financial results announced that same day. The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Jiang and Zhang, substantially similar to the certifications contained in ¶26, *supra*.

37.     On November 15, 2010, UTG filed its Quarterly Report with the SEC on Form 10-Q for the 2010 fiscal third quarter. The Company's Form 10-Q was signed by Defendants Jiang and Xie, and contained the Company's financial results for the

2010 fiscal third quarter.  The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Jiang and Xie, substantially similar to the certifications contained in ¶26, *supra*.

38.  On November 16, 2010, the Company issued a press release entitled, "Universal Travel Group Announces Third Quarter 2010 Results."  Therein, the Company, in relevant part, stated:

> SHENZHEN, China, Nov. 16, 2010 /PRNewswire-Asia-FirstCall/ -- Universal Travel Group (NYSE: UTA) ("Universal Travel Group" or the "Company"), a leading travel services provider in China offering package tours, air ticketing, and hotel reservation services online and via customer service representatives, today announced financial results for the three and nine months ended September 30, 2010.
>
> Third Quarter 2010 Highlights
>
> *    Revenue increased 55.4% year-over-year to $46.3 million
> *    Excluding contribution of newly acquired businesses, revenue
>
>       increased 16.6% year-over-year to $34.7 million
> *    Gross profit increased 37.4% year-over-year to $13.5 million
> *    Gross margin was 29.1%, compared to 32.9% in the prior year period and improved from 28.7% in the prior quarter period
> *    Income from operations increased 27.8% to $9.5 million
>
> *    Net income from continuing operations was $7.3 million or $0.36 per diluted share, compared to $4.7 million or $0.31 per diluted share in the prior year period, a year over year increase of 55.3%
>
> "We are pleased with our third quarter results," said Ms. Jiangping Jiang, Chairwoman and Chief Executive Officer. "Our packaged tour segment continued to grow and remains our largest business segment as a result

of our five recent acquisitions and the efficacy of our various marketing programs. Our air ticketing revenues benefited from increased sales volume as we sold approximately 250,000 more tickets in the third quarter of 2010 compared to same period last year. Our hotel business was flat year-over-year due to the temporary disruption in the supply of hotel room inventory available for advance purchase from the Shanghai World Expo. We expect the growth of our hotel business to resume when market conditions return to normal."

Third Quarter 2010 Financial Results

Revenue for the three months ended September 30, 2010, was $46.3 million compared to $29.8 million for the same period in 2009, an increase of 55.4%. In March 2010, the Company completed the acquisitions of Huangshan Holiday Travel Service Co., Ltd., Hebei Tianyuan International Travel Agency Co., Ltd., and Zhengzhou Yulongkang Travel Agency Co., Ltd. In June 2010, the Company completed the acquisitions of Shanxi Jinyang Travel Agency Co., Ltd. and Kunming Business Travel Agency Co., Ltd. The revenue contribution from these five newly acquired businesses in the third quarter of 2010 was $11.6 million or 25.0% of the Company's total revenues for the quarter. Excluding the contribution of these newly acquired businesses, revenue for the third quarter of 2010 was $34.7

million, an increase of 16.6% from $29.8 million in the same period last year.

Revenue from air-ticketing was $6.7 million, compared to $4.9 million for the same period last year, an increase of 37.4%. This increase was mainly driven by the increase in air-ticket sales volume and growth from our Chongqing Travel World E-Business Co., Ltd. subsidiary.

Revenue generated by the Company's hotel reservation segment was $3.8 million, unchanged from the same period in 2009. The stagnant growth in this segment was due to the low available hotel inventory during the Shanghai World Expo, as the Company decided not to take the risk of purchasing hotel inventory in advance. Sales from the hotel reservation segment are expected to resume its normal growth after this one-time event.

Revenue generated by the Company's packaged tour segment was $35.8 million compared to $21.1 million for the same period in 2009, an increase of 69.7% from the same period last year. This increase was a result of the growth of the Chinese economy, increased sales from our Shenzhen Universal Travel Agency Co., Ltd subsidiary, and efforts in carrying out various marketing programs in this segment.

Gross profit was $13.5 million compared to $9.8 million for the same period last year, an increase of 37.4%. Gross profit margin was 29.1% compared to 32.9% for the same period last year, and 28.7% from the prior quarter in 2010. The decrease in gross profit margin was due to the increasing sales from the packaged tour business as a result of five new acquisitions of packaged tour companies, which have a lower profit margin due to the way revenues are recognized.

Selling, general and administrative ("SG&A") expenses totaled $4.0 million compared to $2.4 million for the same period last year, an increase of 70.3%. The SG&A expenses were 8.7% of revenue compared to 7.9% for the same period last year. The increase in SG&A expenses is in connection with the growth in business operations during the three months ended September 30, 2010, as compared to the same period of last year.

Income from operations was $9.5 million compared to $7.4 million in the same period last year, an increase of 27.8%.

Net income from continuing operations was $7.3 million, or $0.36 per diluted share, compared to $4.7 million, or $0.31 per diluted share, for the same period last year.

Nine Months Results

Revenue for the nine months ended September 30, 2010, was $109.2 million compared to $63.7 million for the same period in 2009, an increase of 71.4%. The revenue contribution from the Company's five newly acquired businesses in the first nine months of 2010 was $28.5 million, or 26.1% of the Company's total revenues. Excluding the contribution of these newly acquired businesses, revenue for the first

nine months of 2010 was $80.7 million, an increase of 26.7% from $63.7 million in the same period last year.

Revenue from air-ticketing segment was $17.1 million, compared to $10.9 million for the same period last year, an increase of 57.0%. Revenue generated by the Company's hotel reservation segment was $10.0 million compared to $9.1 million for the same period in 2009, an increase of 10.4%. Revenue generated by package tours was $82.0 million compared to $43.7 million for the same period in 2009, an increase of 87.6% from the same period last year.

Gross profit was $32.5 million compared to $21.8 million for the same period last year, an increase of 49.0%. Gross profit margin was 29.8% compared to 34.3% for the same period last year.

Selling, general and administrative ("SG&A") expenses totaled $10.6 million compared to $5.2 million for the same period last year, an increase of 103.7%. The SG&A expenses were 9.7% of revenue compared to 8.1% for the same period last year.

Income from operations was $22.0 million compared to $16.6 million in the same period last year, an increase of 32.4%.

Net income from continuing operations was $17.4 million, or $0.93 per diluted share, compared to $5.5 million, or $0.37 per diluted share, for the same period last year. Excluding the effect of the non-cash gain on change in fair value of derivative liabilities of $1.3 million, the non-cash charge related to stock-based compensation of $1.0 million and the $0.07 million one-time, non-cash gain on disposal of fixed assets, the

Company's adjusted net income from continuing operations was $17.1 million, or $0.91 per diluted share, compared to $12.9 million, or $0.86 per diluted share, in the first nine months of 2009, a year-over-year growth of 34.9%. *

\*     \*     \*

Financial Condition

Cash and cash equivalents were $56.7 million as of September 30, 2010. Current assets and current liabilities as of September 30, 2010, were $101.6 million and $12.0 million, respectively, yielding working capital of $89.7 million. The Company has no long-term debt.  For the nine months ended September 30, 2010, net cash provided by operating activities was $17.1 million.

Business Outlook

Ms. Jiang commented, "We continue to focus on improving our sales and profitability by encouraging cross selling across our three businesses and implementing operating efficiencies as we move forward with the integration process for our newly acquired businesses.  We remain optimistic about our business prospects given the strength of the travel market in China, our expanded geographic reach, and the comprehensive travel platform we offer our customers."

As previously announced, for full year 2010, the Company expects to achieve between $145.0 million and $155.0 million in revenue, $27.0 million and $28.0 million in net income, and $1.35 and $1.40 in diluted EPS, excluding the effect of non-cash charges related to the change in

 fair value of derivative liabilities and stock-based compensation and assuming no further dilutive effect from financings or acquisitions.

39.    The statements contained in ¶¶23-38 were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the pre-acquisition net income and revenue of certain companies UTG acquired was less than UTG represented; (2) that there was a lack of evidence supporting certain tour package contracts and related cash payments; (3) that, as a result, the Company's financial statements were misstated; (4) that the Company

lacked adequate internal and financial controls; and (5) that, as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

40.     On March 8, 2011, a research report was published on the Internet that questioned UTG's financial statements, business model and the valuation of recent acquisitions.  Therein, the research report, in relevant part, stated:

· UTA is fabricating its publicly filed financial statements. Its actual underlying business is far smaller than its SEC filings indicate.

· UTA's business model is not credible. For example, UTA claims to have earned $110 million in net revenue in the first three quarters of 2010 on an advertising budget of $247,449 in the highly competitive leisure travel market. Its competitors spend five to 10 times more on marketing as a percentage of net revenue, casting doubt on the authenticity of UTA's revenue and net income.

· UTA has a deficient and unpopular website, boasts only a minimal brick-and-mortar retail operation and has no kiosks under its control to directly sell to consumers. Yet the company's return on assets and asset turnover figures suggest it is the most efficient company in the leisure travel space, consistently trouncing the competition.

· UTA's website is barely functional (as can be seen in our videos here, here, here, here and here), offers a terrible user experience and receives only a small fraction of the traffic of its Chinese competitors, despite the fact that the company holds itself out as an online travel service provider.

· UTA is a serial capital raiser, repeatedly returning to western investors for cash despite supposedly having, according to its balance sheet, ample cash on hand, which sits unused in an account earning  36% in interest per year. UTA is lying about the amount of cash on its balance sheet, as

is evidenced by its inexplicably low interest income.

· UTA has destroyed shareholder value through a series of dilutive acquisitions. The company's acquisition targets had much smaller earnings than UTA claimed in its public filings.

· UTA's purported relationship with Agoda, a subsidiary of Priceline.com, is overstated.

· UTA has burned through 4 low-quality auditors and 3 CFOs in 5 years.

In this report, we present compelling evidence that Universal Travel Group ("UTA" or the "company") is falsifying its publicly filed financial statements. We believe that UTA's SEC financial statements greatly exaggerate the company's revenue, cash balance and net income. UTA is actually a tiny and antiquated brick-and-mortar travel business, and its management is lying about the size and sophistication of the business in order to misappropriate funds from investors.

41.    Additionally, the report, in relevant part, alleged that the pre-acquisition net income and revenue of certain companies that UTG had acquired in 2010 was far less than UTG had represented.  Specifically, the report highlighted that certain of the acquired companies had filed income statements with China's State Administration of Industry and Commerce that reported lower pre-acquisition revenue and net income:

| Acquired Companies in 2010 | | Zhengzhou Yu Long Kang Travel Agency Co (ZYT) | Hebei Tian Yuan International Travel Agency Co (HTT) | Kunming Business Travel Agency Co (KBT) | Shanxi Jin Yang Travel Agency Co (SJT) | Shandong Shi Ji Aviation Development Co |
|---|---|---|---|---|---|---|
| All figures are in USD, using forex rate of $1=6.85 RMB. | Date of Acq. | March 2010 | March 2010 | June 2010 | June 2010 | June 2010 |
| | Purchase Price | $5,700,000 | $4,400,000 | $5,700,000 | $2,300,000 | $5,600,000 |
| UTA Claimed Figures for 2009 | Revenue | $10,500,000 | n/a | $9,400,000 | $5,600,000 | $4,400,000 |
| | Net Income | $800,000 | n/a | $900,000 | $400,000 | $800,000 |
| AIC Filings - 2009 | Revenue | $58,394 | $102,797 | $1,671,128 | $734,868 | $494,755 |
| | Net Income | $4,978 | ($191,687) | $42,483 | $1,866 | $16,747 |
| | Assets | $84,433 | $336,333 | $687,543 | n/a | $438,149 |
| UTA Claimed Net Income Multiple paid | Net Income | 7.1 | n/a | 6.3 | 5.8 | 7.0 |
| Actual Aquired Multiples Paid | Revenue | 97.6 | 42.8 | 3.4 | 3.1 | 11.3 |
| | Net Income | 1145.0 | n/a | 134.2 | 1232.6 | 334.4 |
| | Assets | 67.5 | 13.1 | 8.3 | n/a | 12.8 |

42.     On this news, shares of UTG declined $0.47 per share, or 7.6%, to close on March 9, 2011, at $5.71 per share, on unusually heavy volume.

43.     On March 29, 2011, the Company issued a press release entitled, "Universal Travel Group Postpones Earnings Conference Call From March 30 to Later in 2011." Therein, the Company, in relevant part, stated:

SHENZHEN, China, March 29, 2011 /PRNewswire-Asia/ -- Universal Travel Group ("Universal Travel Group" or the "Company") (NYSE: UTA), a leading travel services provider in China, offering package

tours, air ticketing, and hotel reservation services online and via customer service representatives, today announced that it has postponed its year 2010 earnings conference call previously scheduled for March 30, 2011 at 09:00 a.m. EDT to a later day in 2011 to be determined. The postponement was not due to any accounting irregularities and will allow the Company and its independent auditors to complete their work on the financial statements and audit. The Company regrets any inconvenience that the postponement may have created.

44.     On this news, shares of UTG declined $1.06 per share, or 19.67%, to close on March 30, 2011, at $4.33 per share, on unusually heavy volume.

45.   On March 31, 2011, the Company filed a Notification of inability to timely file Form 10-K with the SEC on Form 12b-25.  Therein, the Company, in relevant part, stated:

> The Company has encountered a delay in assembling the information, in particular its financial statements for the fiscal year ended December 31, 2010, required to be included in its Annual Report on Form 10-K for the year ended December 31, 2010. The Company expects to file its Annual Report on Form 10-K for the year ended December 31, 2010 with the U.S. Securities and Exchange Commission within 15 calendar days of the prescribed due date.

46.   The statements contained in ¶¶43,45, were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the pre-acquisition net income and revenue of certain companies UTG acquired was less than UTG represented; (2) that there was a lack of evidence supporting certain tour package contracts and related cash payments: (3) that, as a result, the Company's financial statements were misstated; (4) that the Company lacked adequate internal and financial controls; and (5) that, as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

### Disclosures at the End of the Class Period

47.   Thereafter, on or around April 11, 2011, trading in UTG's common stock was unexpectedly halted on the NYSE.

48.     On April 14, 2011, the Company issued a press release entitled,

"Universal Travel Group Inc. Appoints EFP Rotenberg & Co, LLP as Independent

Auditors, Subject to Clearing Client Acceptance Procedures." Therein, the Company,

in relevant part, stated:

> SHENZHEN, China, April 14, 2011 /PRNewswire-Asia-FirstCall/ --
> Universal Travel Group Inc. ("Universal Travel Group" or the
> "Company") (NYSE: UTA), a leading travel services provider in China,
> offering package tours, air ticketing, and hotel reservation services
> online and via customer service representatives, today announced it has
> engaged EFP Rotenberg & Co, LLP as its independent registered public
> accounting firm with immediate effect to take over from Windes &
> McClaughry Accountancy Corporation ("Windes") subject to the
> Company clearing Rotenberg's client acceptance procedures.
>
> On April 10, 2011, the Company received notification that its principal
> independent accountants, Windes, had resigned its engagement with the
> Company effective April 9, 2011. Windes was engaged by the Company
> on September 30, 2010. Windes' resignation as the Company's principal
> independent accountant was accepted by the Audit Committee on April
>
>  11, 2011.
>
> Windes had informed the Company in its resignation letter that it was no
> longer able to complete the audit process. Windes stated this was due in
> part to the Company's management and/or the Audit Committee being
> non-responsive, unwilling or reluctant to proceed in good faith and
> imposing scope limitations on Windes' audit procedures.
>
> Windes also stated that it had lost confidence in the Board of Director's
> and the Audit Committee's commitment to sound corporate governance
> and reliable financial reporting.
>
> Prior to its resignation, Windes raised the following issues, some of
> which may be considered to be disagreements, encountered during the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

audit, including issues related to the authenticity of confirmations, a loss of confidence in confirmation procedures carried out under circumstances which Windes believed to be suspicious; issues concerning the lack of evidence of certain tour package contracts and related cash payments.

As a result, Windes had requested authority to perform additional audit procedures and the above issues to be addressed by an independent Audit Committee investigation. Windes stated in its resignation letter that, in its view, the Company was not willing to proceed in good faith with the course of action requested by Windes. Windes also stated in its resignation letter that in its opinion, it believed that certain statements made by Management and the Audit Committee, between March 29, 2011 and its resignation letter, impaired its independence as it related to the Company.

Universal Travel Group disagrees with Windes' reasons for resignation, in particular, the Company and/or the Audit Committee's purported unwillingness or reluctance and/or non-responsiveness to proceed in good faith and imposition of scope limitations on Windes' audit procedures, the Company's purported unwillingness to proceed in good faith with courses of action requested by Windes and the Company's

management and the Audit Committee's purported impairment of Windes' independence in relation to the Company a result of certain statement made by them.

Universal Travel Group believes that it has acted responsively, prudently and in good faith to address the numerous issues raised by Windes during the entire audit process. Windes disagrees. The Company's management, the Audit Committee and Windes attempted to resolve these disagreements to no avail.

The Company has authorized Windes to respond fully to the inquiries of its successor accountant regarding the subject matter of each of such disagreements.

Windes has not provided any opinions, qualification or modification to

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the Company's financial statements for each of the past two fiscal years. The Company does not have, as otherwise disclosed above, any other disagreements or reportable events as described under Item 304(a)(1) of Regulations S-K.

49.     On April 14, 2011, the Company filed a Current Report on Form 8-K.

Therein, the Company, in relevant part, stated:

**Item 4.01   Changes in Registrant's Certifying Accountant**

On April 10, 2011, Universal Travel Group (the "Company" or "we") received notification that its principal independent accountants, Windes & McClaughry Accountancy Corporation ("Windes") had resigned its engagement with the Company effective April 9, 2011. Windes was engaged by us on September 30, 2010. Windes' resignation as the Company's principal independent accountant was accepted by the Audit Committee on April 11, 2011.

*The following reportable disagreements occurred within the period from Windes' engagement through the date of its resignation, which if not resolved to the satisfaction of Windes, would have caused it to*

*make a reference to the subject matter of the disagreements in connection with its report.*

*Windes had informed the Company in its resignation letter that it was no longer able to complete the audit process. Windes stated this was due in part to Management and/or the Audit Committee being non-responsive, unwilling or reluctant to proceed in good faith and imposing scope limitations on Windes' audit procedures.*

*Windes also stated that Windes had lost confidence in the Board of Directors' and the Audit Committee's commitment to sound corporate governance and reliable financial reporting.*

*Prior to its resignation, Windes raised the following issues (some of which may be considered to be disagreements) encountered during the*

*audit, including issues related to the authenticity of confirmations, a loss of confidence in confirmation procedures carried out under circumstances which Windes believed to be suspicious; issues concerning the lack of evidence of certain tour package contracts and related cash payments.*

*As a result, Windes had requested authority to perform additional audit procedures and the above issues to be addressed by an independent Audit Committee investigation. Windes stated in its resignation letter that, in its view, the Company was not willing to proceed in good faith with the course of action requested by Windes.  Windes also stated in its resignation letter that in its opinion, Windes believed that certain statements made by Management and the Audit Committee, between March 29, 2011 and its resignation letter, impaired its independence as it related to the Company.*

We disagree with Windes' reasons for resignation, in particular Management and/or the Audit Committee's purported unwillingness or reluctance and/or non-responsiveness to proceed in good faith and imposition of scope limitations on Windes' audit procedures, the Company's purported unwillingness to proceed in good faith with courses of action requested by Windes and Management and the Audit Committee's purported impairment of Windes' independence in relation to the Company a result of certain statement made by them.

We believe that we have acted responsively, prudently and in good faith to address the numerous issues raised by Windes during the entire audit process. Windes disagrees. Management, the Audit Committee and Windes  attempted to resolve these disagreements to no avail.

(Emphasis added).

## CLASS ACTION ALLEGATIONS

50.    Plaintiff brings this action as a class action pursuant to Federal Rule of

Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who

1   purchased UTG's securities between January 19, 2010 and April 12, 2011, inclusive

2   (the "Class Period") and who were damaged thereby.  Excluded from the Class are

3

4   Defendants, the officers and directors of the Company, at all relevant times, members

5   of their immediate families and their legal representatives, heirs, successors or assigns

6
    and any entity in which Defendants have or had a controlling interest.
7

8        51.    The members of the Class are so numerous that joinder of all members

9   is impracticable.  Throughout the Class Period, UTG's securities were actively traded

10
    on the NYSE.  While the exact number of Class members is unknown to Plaintiff at
11

12  this time and can only be ascertained through appropriate discovery, Plaintiff believes

13
    that there are hundreds or thousands of members in the proposed Class.  Millions of
14

15  UTG shares were traded publicly during the Class Period on the NYSE and as of

16  November 1, 2010, UTG had 19,898,235 shares of common stock outstanding.

17
    Record owners and other members of the Class may be identified from records
18

19  maintained by UTG or its transfer agent and may be notified of the pendency of this

20  action by mail, using the form of notice similar to that customarily used in securities

21
    class actions.
22

23       52.    Plaintiff's claims are typical of the claims of the members of the Class

24  as all members of the Class are similarly affected by Defendants' wrongful conduct

25
    in violation of federal law that is complained of herein.
26

27

28

53.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

54.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     Whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of UTG; and

(c)     To what extent the members of the Class have sustained damages and the proper measure of damages.

55.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

56.     The market for UTG's securities was open, well-developed and efficient at all relevant times.   As a result of these materially false and/or misleading statements, and/or failures to disclose, UTG's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired UTG's securities relying upon the integrity of the market price of the Company's securities and market information relating to UTG, and have been damaged thereby.

57.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of UTG's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.   Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about UTG's business, operations, and prospects as alleged herein.

58.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to

1   be made a series of materially false and/or misleading statements about UTG's

2
3   financial well-being and prospects.  These material misstatements and/or omissions

4   had the cause and effect of creating in the market an unrealistically positive

5   assessment of the Company and its financial well-being and prospects, thus causing

6
7   the Company's securities to be overvalued and artificially inflated at all relevant times.

8   Defendants' materially false and/or misleading statements during the Class Period

9   resulted in Plaintiff and other members of the Class purchasing the Company's

10
11   securities at artificially inflated prices, thus causing the damages complained of

12   herein.

13
                        **LOSS CAUSATION**
14
15      59.   Defendants' wrongful conduct, as alleged herein, directly and

16   proximately caused the economic loss suffered by Plaintiff and the Class.

17      60.   During the Class Period, Plaintiff and the Class purchased UTG's
18
19   securities at artificially inflated prices and were damaged thereby.  The price of the

20   Company's securities significantly declined when the misrepresentations made to the

21
22   market, and/or the information alleged herein to have been concealed from the market,

23   and/or the effects thereof, were revealed, causing investors's losses.

24

25

26                     **SCIENTER ALLEGATIONS**

27
28

61.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding UTG, his/her control over, and/or receipt and/or modification of UTG's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning UTG, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

62.     The market for UTG's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, UTG's securities traded at artificially inflated prices during the Class Period.  On March 5, 2010, the closing price of the Company's common stock reached a Class Period high of $10.85 per share.   Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of UTG's securities and market information relating

1    to UTG, and have been damaged thereby.

2         63.    During the Class Period, the artificial inflation of UTG's stock was

3    caused by the material misrepresentations and/or omissions particularized in this

4
5    Complaint causing the damages sustained by Plaintiff and other members of the Class.

6    As described herein, during the Class Period, Defendants made or caused to be made

7    a series of materially false and/or misleading statements about UTG's business,

8
9    prospects, and operations.  These material misstatements and/or omissions created an

10   unrealistically positive assessment of UTG and its business, operations, and prospects,

11
12   thus causing the price of the Company's securities to be artificially inflated at all

13   relevant times, and when disclosed, negatively affected the value of the Company

14
15   stock.  Defendants' materially false and/or misleading statements during the Class

16   Period resulted in Plaintiff and other members of the Class purchasing the Company's

17
18   securities at such artificially inflated prices, and each of them has been damaged as a

19   result.

20        64.    At all relevant times, the market for UTG's securities was an efficient

21
22   market for  the following reasons, among others:

23        (a)    UTG stock met the requirements for listing, and was listed and

24
25   actively traded on the NYSE, a highly efficient and automated market;

26        (b)    As a regulated issuer, UTG filed periodic public reports with the

27
     _____
     CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

28                                                                              56

1   SEC and the NYSE;

2

3          (c)    UTG   regularly   communicated   with   public   investors *via*

4   established   market   communication   mechanisms,   including   through   regular

5   dissemination of press releases on the national circuits of major newswire services and

6

7   through other wide-ranging public disclosures, such as communications with the

8   financial press and other similar reporting services; and

9          (d)    UTG   was   followed   by   securities   analysts   employed   by   major

10  brokerage firms who wrote reports about the Company, and these reports were

11

12  distributed to the sales force and certain customers of their respective brokerage firms.

13  Each of these reports was publicly available and entered the public marketplace.

14

15     65.    As a result of the foregoing, the market for UTG's securities promptly

16  digested current information regarding UTG from all publicly available sources and

17

18  reflected such information in UTG's stock price. Under these circumstances, all

19  purchasers of UTG's securities during the Class Period suffered similar injury through

20  their purchase of UTG's securities at artificially inflated prices and a presumption of

21

22  reliance applies.

23                        **NO SAFE HARBOR**

24     66.    The statutory safe harbor provided for forward-looking statements under

25

26  certain circumstances does not apply to any of the allegedly false statements pleaded

27

28                                                                        57

in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of UTG who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

67.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

68.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i)

deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase UTG's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

69.     Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for UTG's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

70.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about UTG's financial well-being and prospects, as specified herein.

71.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of

UTG's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about UTG and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

72. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of

these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

73.     The Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing UTG's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

74.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of UTG's securities was artificially inflated during the Class Period.   In

ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired UTG's securities during the Class Period at artificially high prices and were damaged thereby.

75.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that UTG was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their UTG securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

76.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

77.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their

respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

78.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

79.    The Individual Defendants acted as controlling persons of UTG within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

80.    In particular, each of these Defendants had direct and supervisory

involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

81.     As set forth above, UTG and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.   By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses

incurred in this action, including counsel fees and expert fees; and

     (d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: April 25, 2011     **GLANCY BINKOW & GOLDBERG LLP**

By: _____
Lionel Z. Glancy
Michael Goldberg
Robert V. Prongay
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160


**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff Wei Kuang Yen*

---

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

65

## SWORN CERTIFICATION OF PLAINTIFF

Universal Travel Group, **SECURITIES LITIGATION**

I, Wei Kuang Yen, certify that:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase Universal Travel Group, the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Universal Travel Group during the class period set forth in the Complaint are as follows:

   I bought _ 860_____ shares on _ 03/09/11___/____/____ at $ _ 5.8116____ per share.
   I bought _____ shares on ____/____/____ at $_____ per share.
   I bought _____ shares on ____/____/____ at $_____ per share.
   I bought _____ shares on ____/____/____ at $_____ per share.
   I bought _____ shares on ____/____/____ at $_____ per share.

   I sold _____ shares on ____/____/____ at $_____ per share.
   I sold _____ shares on ____/____/____ at $_____ per share.
   I sold _____ shares on ____/____/____ at $_____ per share.
   I sold _____ shares on ____/____/____ at $_____ per share.
   I sold _____ shares on ____/____/____ at $_____ per share.

   (List Additional Transactions on a Separate Page if Necessary)

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

   ___ ☐ Check here if you are a current employee or former employee of the defendant Company.

   I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: __4/20/2011_____

_____
(Please Sign Your Name Above)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Otis D. Wright II and the assigned discovery Magistrate Judge is Fernando M. Olguin.

The case number on all documents filed with the Court should read as follows:

## CV11- 3537 ODW (FMOx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division** | **[ ] Southern Division** | **[ ] Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Michael Goldberg (#188669)
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone: (310) 201-9150

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEI KUANG YEN, Individually and on Behalf of All Others Similarly Situated, <br><br> PLAINTIFF(S) <br><br> v. <br><br> UNIVERSAL TRAVEL GROUP, JIANGPING JIANG, YIZHAO ZHANG, and JING XIE, <br><br> DEFENDANT(S). | CASE NUMBER <br><br> **CV11-03537** ODW (FMOx) <br><br><br> **SUMMONS** |

TO:   DEFENDANT(S): THE ABOVE-NAMED DEFENDANTS _____

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Michael Goldberg_____, whose address is _1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

APR 2 5 2011

Dated: _____

Clerk, U.S. District Court

By: _____
      Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

Name & Address:
Michael Goldberg (#188669)
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone: (310) 201-9150

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEI KUANG YEN, Individually and on Behalf of All Others Similarly Situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>UNIVERSAL TRAVEL GROUP, JIANGPING JIANG, YIZHAO ZHANG, and JING XIE,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV11-03537** ODW(FMOx)<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): THE ABOVE-NAMED DEFENDANTS

A lawsuit has been filed against you.

Within   21   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  Michael Goldberg _____ , whose address is  1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067 _____ .  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

APR 2 5 2011

JULIE PRADO

SEAL

Dated: _____

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| WEI KUANG YEN, Individually and on Behalf of All Others Similarly Situated, | UNIVERSAL TRAVEL GROUP, JIANGPING JIANG, YIZHAO ZHANG, and JING XIE |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Michael Goldberg (#188669)<br>Glancy Binkow & Goldberg LLP<br>1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067, T. (310) 201-9150 | |

### II. BASIS OF JURISDICTION (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. ORIGIN (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

### V. REQUESTED IN COMPLAINT:   JURY DEMAND: ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

CLASS ACTION under F.R.C.P. 23: ☑ Yes   ☐ No   ☐ MONEY DEMANDED IN COMPLAINT: $ to be proved

### VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Violation of Sections 10(b) and 20(a) of the Securities Exchange Act and Violation of SEC Rule 10b-5

### VII. NATURE OF SUIT (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☑ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

# CV11-03537

FOR OFFICE USE ONLY:   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Houston, TX |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | People's Republic of China |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, CA | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date April 25, 2011

   **Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |